# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TOMMY E. SPRADLEY, an individual resident of Wagoner County, Oklahoma,<br><br>    Plaintiff,<br><br>v.<br><br>THE OWENS-ILLINOIS HOURLY EMPLOYEES WELFARE BENEFIT PLAN, an entity amenable to suit pursuant to 29 U.S.C. § 1132(d)(1),<br><br>    Defendant. | Case No. CIV-09-460-RAW |

## ORDER and OPINION

Before the court is Defendant's Motion for Judgment on the Administrative Record [Docket No. 31]. For the reasons delineated below, the motion is hereby DENIED. This matter is hereby REMANDED to Defendant who shall direct the Committee to further evaluate and reconsider Plaintiff's claim for PTD Life Insurance benefits in accordance with this Order and Opinion. Additionally, the Motion for Discovery Outside the Record [Docket No. 20] is hereby DENIED. The Motion for Leave to Amend Complaint to Add Party Defendant [Docket No. 44] is also hereby DENIED.

## THE COMPLAINT

Plaintiff is retired from Owens-Illinois, Inc. (hereinafter "Owens-Illinois" or the "Company"). Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et. seq. (hereinafter "ERISA"). Plaintiff claims he is entitled to receive certain

employee benefits through and/or from Defendant, Owens-Illinois, Inc. Hourly Employees Welfare Benefit Plan (hereinafter "Defendant" or the "Plan") administered by the Owens-Illinois, Inc. Employee Benefit Committee (hereinafter the "Committee" or the "Plan Administrator").

Plaintiff claims that he was entitled to receive Permanent and Total Disability Life Insurance Benefits (hereinafter "PTD Life Insurance benefit(s)") under the Plan if: (1) he became permanently and totally disabled before age sixty-five (65); (2) he filed his claim within twelve (12) months after stopping active work with Owens-Illinois; and (3) he was unable to work for the rest of his life at any gainful occupation for which he was fitted by education, training or experience or for which he could reasonably become fitted.

Plaintiff claims that on September 14, 2007, he underwent a surgical procedure. He states that as a direct consequence of post-surgical complications, he became permanently and totally disabled and will be unable to work for the rest of his life at any gainful occupation for which he has been fitted by education, training or experience or for which he could reasonably become fitted. Plaintiff states that he was under age 65 at the time he became disabled. He claims that he is entitled to PTD Life Insurance benefits under the Plan.

Plaintiff also claims that he stopped active work on April 30, 2008 and properly claimed the PTD Life Insurance benefits to which he is entitled on July 31, 2008. He states that his PTD Life Insurance benefits would equal $27,000.00. He states that he was denied PTD Life Insurance benefits for the sole reason that his application was not made within twelve (12) months after stopping active work with Owens-Illinois.

Plaintiff states two claims for relief. His first claim, pursuant to 29 U.S.C. § 1132(a)(1)(B), is that the denial of his PTD Life Insurance benefits under the Plan was wrongful, arbitrary and

capricious. He claims that he has exhausted his administrative remedies. He requests an award in the amount of $27,000.00 and costs, fees and interest.

His second claim is that Defendant failed to provide him with a copy of the actual Plan documents within the meaning of 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1132(c)(1). He claims he requested the documents on April 9, 2009 and that his request was ignored. He requests an amount equal to $110.00 per day from May 9, 2009 until documents responsive to his April 9, 2009 request are provided to him and for his costs and fees. Plaintiff now admits that the proper defendant to this claim would have been the Committee; he has moved to amend his Complaint to add the Committee.

## UNDISPUTED MATERIAL FACTS

Owens-Illinois established and maintains the Plan for the purpose of providing certain benefits to the employees of its component companies, including Owens-Brockway Glass Container, Inc. The Committee is the Plan Administrator.

One of the types of coverage available under the Plan is PTD Life Insurance benefits. The PTD Life Insurance benefit allows an employee who is disabled to maintain life insurance during the period of the disability and to secure an immediate lump sum payment of a portion of the employee's life insurance benefits as a disability benefit.[1] Plaintiff points out that the PTD Life Insurance benefit is the coverage at issue in this litigation, but also that understanding the differences between the PTD Life Insurance benefit and another type of coverage, the Permanent and Total Disability Retirement Income Benefit (hereinafter "PTD Retirement Income"), is essential to the

---

[1] The Company, Owens-Illinois, pays the full cost of this coverage.

resolution of this case.²

Pursuant to the terms of the Plan, the PTD Life Insurance benefit exists only during employment. As life insurance coverage under the Plan, it ends at the end of the month in which employment with the company ends. To be eligible for PTD Life Insurance benefits, an employee must: (1) become permanently and totally disabled before reaching age 65; (2) submit a claim for PTD Life Insurance benefits within twelve (12) months of stopping active work; and (3) be unable to work for the rest of his or her life at any gainful occupation for which he or she is fitted by education, training or experience or for which he or she could reasonably become fitted.

The Plan vests the Plan Administrator with discretion to interpret the Plan and determine eligibility as follows: "The Plan Administrator has the sole and exclusive responsibility for the management, interpretation, and administration of the Company's benefit plans. It has full discretion and authority to determine eligibility for participation and benefits."³

Plaintiff began employment with Owens-Illinois at its facility in Muskogee, Oklahoma in June of 1971. In September of 2007, Plaintiff ceased active work with Owens-Illinois due to surgery and associated convalescence. Plaintiff submitted a claim to the Social Security Administration in February of 2008 seeking Social Security disability benefits. Plaintiff did not seek PTD Life Insurance benefits under the Plan at this time. In March of 2008, Plaintiff returned to active work with Owens-Illinois.

---

²The court will include those sections of the Summary Plan Description (hereinafter "SPD") below.

³Plaintiff does not dispute that the Plan provides as such, but argues that Committee is not vested with any authority, discretionary or otherwise, to adjudicate claims for insurance benefits. Based upon other language in the Plan, Plaintiff argues that the Claims Administrator rather than the Plan Administrator had the authority to decide his claim. Plaintiff argues that the Committee's denial of his claim should not be afforded deference by this court.

After nearly thirty-seven (37) years of employment with the Company, on April 30, 2008, Plaintiff terminated his employment with Owens-Illinois, taking early retirement and electing the "Level Income Option."[4]  Some months after his retirement (Plaintiff alleges a date of July 31, 2008), Plaintiff sought PTD Life Insurance benefits.  On February 12, 2009, Plaintiff's attorney faxed a letter that was dated December 12, 2008 to the Plan Administrator claiming PTD Life Insurance benefits.  The letter, *inter alia*, cited the SPD, noted that Plaintiff had been asserting his claim for benefits since July of 2008, and attached his letter of award of Social Security Disability benefits.

On February 17, 2009, the Plan Administrator denied Plaintiff's claim for PTD Life Insurance benefits on the ground that Plaintiff had retired and, therefore, no longer had coverage for said benefits.[5]  Plaintiff administratively appealed the decision denying his claim by letter faxed to the Plan Administrator on February 26, 2009.[6]

At its committee meeting scheduled for April 20, 2009, the Plan Administrator upheld its denial on the same singular ground upon which its initial decision was based – Plaintiff's coverage for PTD Life Insurance benefits ceased upon termination of his employment.  The administrator

---

[4]Defendant argues the Level Income Option is only available to employees who do not claim disability benefits.  Plaintiff maintains that the Level Income Option is not available to employees who take PTD Retirement Income, but is available to those who take PTD Life Insurance benefits.

[5]Plaintiff correctly notes that the denial letter did not mention the language in the Plan giving an employee twelve (12) months after stopping active work to submit a claim.

[6]Plaintiff notes that his appeal was principally aimed at seeking an explanation as to why the Committee deemed his claim untimely in light of the language giving him twelve (12) months after he stopped active work with Owens-Illinois to submit his claim.

notified Plaintiff of its appeal decision on April 27, 2009.[7]

Plaintiff filed this action on November 24, 2009, and on January 15, 2010, counsel for Defendant provided counsel for Plaintiff with copies of the SPD and the Plan Adoption Agreement, which incorporates by reference the SPD.

## SUMMARY PLAN DESCRIPTION

Under the heading "Retirement Benefits," the SPD states that the Plan includes a number of special features for which an employee may qualify:

> – A normal retirement benefit at age 65.
> – An early retirement benefit at age 55.
> – A disability retirement benefit.[8]
> – A death benefit for your surviving spouse, whether you die before or after you begin to collect your pension.

Plaintiff retired under one of the options for early retirement – the "Level Income Option." The Level Income Option is described in pertinent part as follows on page 105 of the SPD:

> If you retire on or after age 55, but before age 62, you can elect the level income option. This option lets you "level out" your retirement income so that your total retirement benefits are approximately the same both before and after you begin to receive Social Security benefits. This is accomplished by increasing your Plan benefits in the years before you start receiving Social Security payments at age 62 by a percentage of the estimated Social Security amount at age 62. Then, when you start to receive Social Security payments at age 62, your Plan benefit payments are reduced so that your total monthly income should stay about the same.
> Your benefit from this Plan is reduced on the first of the month following the month in which you reach 62. Your first Social Security payment may lag behind this reduction by 30 days, depending on Social Security laws in effect at that time regarding qualification for first payments.

---

[7]Plaintiff notes that the denial of the appeal did not mention the "12-Month Language" even though the Committee "had been fairly well beseeched to address that specific issue."

[8]This is the PTD Retirement Income option described below.

6

The level income option:
– Can be combined with the straight-life annuity, 50% joint and survivor, and contingent annuity options described on page 104.
– Is not available to terminated employees with deferred vested rights, to employees under age 55 with 30 or more years of service who are eligible for retirement as a result of plant closing, <u>or to employees who retire under the permanent and total disability retirement</u>.[9]
– Cannot be combined with the Contingent Annuitant with Reversion Options.

Plaintiff filed his claim for PTD Life Insurance benefits. The SPD describes the requirements that must be met in order to receive PTD Life Insurance benefits on page 92:

Permanent and total disability (PTD) life insurance benefits are paid if:
– You become permanently and totally disabled before you reach age 65, and
– File a claim within <u>12 months after you stop active work</u> with the Company, and
– You are unable to work for the rest of your life at any gainful occupation for which you are fitted by your education, training, or experience or for which you could reasonably become fitted.
Alternatively, you can qualify for PTD benefits if, on or after April 1, 1999, you are under age 65 and receive an award for Social Security Disability benefits. That award must be submitted to the insurance company responsible for making the PTD award decision. Claim filing must meet the requirements described in PTD Benefit Claims and Appeals on page 93.

As to PTD Life Insurance benefit claims, the SPD provides on page 93:

Claims for PTD benefits must be filed within <u>12 months from the last day worked</u>. If you are receiving Worker's Compensation or if you have a disabling condition that may change dramatically, you will be required to document your medical condition with the Company before the expiration of one year from your last day worked, but you could then apply for PTD within five years from your last day worked.

---

[9]Again, this is clearly the PTD <u>Retirement Income option</u> described below. The PTD <u>Life Insurance benefit</u> is <u>not</u> a <u>retirement</u> option. As the court will discuss more later, some confusion is created by the language in the February 17, 2009 denial of benefits letter where it states: "Mr. Spradley was able to receive a level income benefit from the Owens-Illinois Hourly Retirement Plan which would not have otherwise been available to him had he commenced a PTD <u>retirement</u> benefit from the Owens-Illinois Hourly Retirement Plan." This is clearly in reference to the PTD <u>Retirement Income option</u>, <u>not</u> the PTD <u>Life Insurance benefit</u>. Plaintiff did not opt for PTD Retirement Income.

7

> The Company sends a notice by registered mail on or about 90 days before the end of the <u>one-year application period</u>. The notice advises you to file a PTD claim or provide evidence of your medical condition <u>before the 12-month anniversary of your last day worked</u>.
>
> The Claims Administrator may ask you to have an examination by a physician selected by the Claims Administrator at its expense. The Claims Administrator will make the decision as to whether you are permanently and totally disabled, based on the nature and extent of your disability.
>
> All of the necessary forms are available from your plant personnel representative.
>
> If your claim is denied, you can request through your bargaining representative that you be examined by a third doctor. A doctor who is mutually agreed upon by the Company and the Union will be selected. The third doctor will usually be an American Medical Association Board Certified Specialist in the specialty area of medicine most closely related to your medical condition. The decision of the third doctor will be binding on both parties.

PTD Retirement Income is not at issue in this action, but as Plaintiff has noted, recognizing the distinctions between the PTD Retirement Income option and PTD Life Insurance benefits is necessary in determining his rights. In particular, Plaintiff has twelve (12) months from the last day he worked with the Company to file for PTD Life Insurance benefits, but must opt for PTD Retirement Income upon retirement, as PTD Retirement Income is a form of retirement under the Plan. Also, the PTD Retirement Income option is not available with a Level Income Option early retirement, but no such limitation is placed on PTD Life Insurance benefits in the SPD.

On the subject of PTD Retirement Income, the SPD provides in pertinent part on page 95:

> You are eligible for disability retirement income benefits provided by Owens-Illinois Hourly Retirement Plan, provided you have 10 or more years of credited service with the Company (see page 99 for a definition of credited service) and become permanently and totally disabled while you are an active employee. You will be considered permanently and totally disabled for purposes of this benefit if the insurance company approves your claim for permanent and total disability under the PTD provision of the group insurance program (see page 92).

As to PTD Retirement Income claims, the SPD provides in pertinent part on page 96:

8

You may request an estimate of the disability retirement income benefit and the option available to you by having your personnel representative submit a Benefit Calculation Request form to the Retirement Department. If your claim for PTD (as described on page 92) is approved by the group insurance company, you may then request a final disability retirement calculation and submit copies of birth certificates (yours and your spouse's) and a completed retirement application to the Retirement Department. Your plant personnel representative will help you complete the appropriate forms.

The SPD specifies on page 78 when life insurance coverage ends:

Your life insurance coverage ends at the end of the month in which:
– Your employment with the Company ends;
– Your are no longer in a class eligible for coverage;
– You retire; or
– Life insurance coverage is terminated.

The Plan gives the Plan Administrator discretion in evaluating claims, as is clear from page 119 of the SPD:

The Plan Administrator has the sole and exclusive responsibility for the management, interpretation, and administration of the Company's benefit plans. It has full discretion and authority to determine eligibility for participation and benefits.
All interpretations of the Company's benefit plans and all questions concerning their administration or application, including any eligibility determination and any claim for benefits, shall be determined by the Plan Administrator (or its delegate) in its sole and absolute discretion, and such determination shall be conclusive and binding on all persons to the maximum extent permitted by law.

Page 115 of the SPD lists the Committee as the Plan Administrator. Pages 116-17 list several insurance companies as the "Insurance Carrier / Claims Administrator."

## STANDARD OF REVIEW

The parties agree that in reviewing a claim for benefits pursuant to 29 U.S.C. § 1132(a), when the plan in question gives a plan administrator or fiduciary discretionary authority to construe the

terms of the plan or to determine eligibility for benefits, the court must review the plan administrator's decision under a deferential standard. Defendant maintains that the court has already ruled on April 2, 2010, that the standard of review in this case is the arbitrary and capricious standard.

Plaintiff, however, argues that the court should review the Committee's decision denying his claim *de novo* because: (1) the Committee "had no authority whatsoever to adjudicate it" and should have instead referred him to the life insurance company when he submitted his claim, and (2) "Defendant failed to substantially comply with the temporal requirements established by the Plan and by law." Plaintiff further argues that even if the court utilizes a deferential review, deference should be reduced because: (1) the review was untimely, (2) the explanations given by Defendant in its denial of the Plaintiff's claim and its review were inadequate, and (3) the denial was not based upon relevant evidence.

The court first looks to the Plan itself, and if the terms are not ambiguous, the court construes them as a matter of law. Administrative Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard, 393 F.3d 1119, 1123 (10th Cir. 2004) ("In interpreting an ERISA plan, the court examines the plan documents as a whole and, if unambiguous, construes them as a matter of law."). In interpreting the Plan, the court gives "the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." Id. (citation omitted).

To the extent the terms of the Plan are ambiguous, because the Plan gives the Plan Administrator discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, the court employs a deferential standard of review. Firestone Tire and Rubber Co. v.

Bruch, 489 U.S. 101, 111-15 (1989). "Ambiguity exists when a plan provision is 'reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term.'" Id. (citation omitted). The Tenth Circuit, noting that the "abuse of discretion" standard and the "arbitrary and capricious" standard are the same, stated that it applies the arbitrary and capricious standard of review. Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 n.1 (10th Cir. 1996).

"When reviewing under the arbitrary and capricious standard, '[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary and capricious.'" Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1460 (10th Cir. 1991)). "The reviewing court 'need only assure that the administrator's decision fall[s] somewhere on the continuum of reasonableness – even if on the low end.'" Id. (quoting Vega v. National Life Ins. Serv., Inc., 188 F.3d 287, 297 (5th Cir. 1999).

The deference given to the Committee's decision may be affected by other factors. For example, deference may be decreased when there is a conflict of interest. "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115 (citation, quotation marks and alteration omitted). In reviewing and reaffirming Firestone, the Supreme Court stated: "Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account."[10] Metropolitan Life Ins. Co. v. Glenn,

---

[10]In effect, Glenn superceded the burden-shifting approach enunciated in Fought v. UNUM Life Ins. Co. of America, 379 F.3d 997 (10th Cir. 2004). Holcomb v. Unum Life Ins.

11

554 U.S. 105, 128 S.Ct. 2343, 2351 (2008).

The court must also consider other factors that may affect the standard of review, for example, when: a substantial violation of ERISA deadlines result in the claim being automatically deemed denied on review; the claim decision maker fails to gather or examine relevant evidence; or a plan is inconsistent in handling an applicant's claims. Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 631 (10th Cir. 2003); Kimber v. Thiokol Corp., 196 F.3d 1092, 1097 (10th Cir. 1999).

**Plaintiff's Arguments for *De Novo* or Less Deferential Review**

Plaintiff argues that the court should review the Committee's denial of his claim for PTD Life Insurance benefits *de novo* because the Committee had no authority to adjudicate his claim. Plaintiff argues that the Claims Administrator – Aetna Life Insurance Company, not the Plan Administrator – the Committee, has the authority to adjudicate his claim. He bases this assertion on the portions of the description of PTD Life Insurance benefits in the Plan that refer to submitting a claim to the insurance company and to the Claims Administrator handling the claim.

As Defendant points out, however, as is stated on page 119 of the SPD, the Plan gives the Plan Administrator "sole and exclusive responsibility for the management, interpretation, and administration of the Company's benefit plans." The Plan Administrator "has full discretion and authority to determine eligibility for participation and benefits." Furthermore, "All interpretations of the Company's benefit plans and all questions concerning their administration or application, including any eligibility determination and any claim for benefits, shall be determined by the Plan Administrator (or its delegate) in its sole and absolute discretion."

In fact, Plaintiff's attorney submitted his claim to the Plan Administrator, not to the Claims

---

Co. of America, 578 F.3d 1187, 1192-93 (10th Cir. 2009) (recognizing the rejection and abrogation of the Fought burden-shifting approach by Glenn).

Administrator or Aetna Life Insurance Company. As Defendant argues, even though the Plan does give the Claims Administrator authority to handle PTD Life Insurance benefits claims, ultimately the Plan Administrator has "sole and absolute discretion," and thus, the final determination on eligibility for any claim for benefits under the Plan. Plaintiff is incorrect in his argument that the Committee had no authority to review his claim. The Committee has ultimate authority to review claims under the Plan.

Nevertheless, the court understands, as Plaintiff has argued, that by bypassing the Plan's procedure, his claim was reviewed initially and on appeal by the same Committee, as opposed to having a fresh review on appeal. The court considers that factor in its review.

As Defendant notes, in his Sur-Response, Plaintiff drops his untimeliness arguments. In any event, for substantially the reasons in Defendant's Reply and Sur-Reply, the court finds there was not a substantial violation of ERISA deadlines. Pursuant to 29 C.F.R. § 2560.503-1(i)(3)(ii), the Committee held a timely review of Plaintiff's appeal.

Plaintiff has also argued that the explanations given by the Committee in its denial of the Plaintiff's claim and its review were inadequate. The reason the Committee gave for the denial of Plaintiff's claim was that his benefit coverage under the Plan ceased on April 30, 2008, the last day of the month in which he was employed.

Even though Plaintiff argued that under the Plan he had twelve (12) months after he stopped active work with the Company to claim PTD Life Insurance benefits, the Committee did not discuss this topic. Instead, it simply stated that he was no longer covered under the Plan. Though the court believes the Committee could have, and probably should have, more fully explained its position to Plaintiff, this does amount to an inadequate explanation.

Plaintiff also argues that the denial was not based upon relevant evidence because the Committee relied on language from the portion of the Plan discussing PTD Retirement Income. The court does not agree. The denial was based primarily upon the fact that the Committee determined that Plaintiff was no longer covered under the Plan. The Committee merely noted its belief that Plaintiff could not have opted for the "PTD retirement benefit" after he took the Level Income Option. To the extent, however, that the Committee did base its decision on that language, Plaintiff is correct.

Accordingly, the court construes the unambiguous terms of the plan as a matter of law, but where the terms are ambiguous, the court will review the Committee's decision by the arbitrary and capricious standard, taking into account the factors noted above.

**FIRST CLAIM**

Plaintiff claims that he is entitled to PTD Life Insurance benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). He submitted his claim for PTD Life Insurance benefits within twelve (12) months of stopping active work with Owens-Illinois. There is no dispute that he became permanently and totally disabled before reaching age 65 while he still worked for Owens-Illinois. There is also no dispute that he is unable to work for the rest of his life at any gainful occupation for which he is fitted by his education, training, or experience or for which he could reasonably become fitted.

The main reason for the Committee's denial of his PTD Life Insurance benefits claim is that he submitted the claim after he retired, and thus was no longer eligible for life insurance benefits based on the language on page 78 of the SPD stating that life insurance coverage ends when an

employee retires. The section on PTD Life Insurance benefits is clear, however, that an employee may file a claim therefor within twelve (12) months of his last day worked with the Company.

To the court, this language is quite clear and unambiguous. Plaintiff stopped active work with the company when he retired on April 30, 2008. Defendant contends, however, that to "stop active work" means to remain employed by the Company, but on some type of disability leave. The court is not convinced that any reasonable Plan participant would have imagined the unwritten fine print Defendant suggests is present to be a part of the terms of the Plan. As the court finds the language unambiguous, therefore, the court determines that Plaintiff had twelve (12) months after his retirement to file for PTD Life Insurance benefits.

The Committee also noted in its denial that because Plaintiff took the early retirement Level Income Option, the "PTD retirement benefit" was not available to him. The denial letter stated specifically:

> It is also noted, that by choosing not to advise Owens-Illinois that he had applied for a Social Security Disability Benefit, Mr. Spradley was unable to receive a level income benefit from the Owens-Illinois Hourly Retirement Plan which would not have otherwise been available to him had he commenced a PTD retirement benefit from the Owens-Illinois Hourly Retirement Plan.

The court is convinced that this language in the denial letter must simply be the result of some confusion on the part of the Committee. It is true that under the plain terms of the Plan as noted above, a Plan participant may not take both a Level Income Option retirement and PTD Retirement Income. Plaintiff is not, however, requesting PTD Retirement Income. He is requesting PTD Life Insurance benefits.

Under the plain terms of the Plan, there is no restriction on a Plan participant taking a Level Income Option retirement and claiming PTD Life Insurance benefits. The court is convinced that

15

any reasonable Plan participant would have deduced the same from the Plan documents.

**Plan Administrator's Decision**

Assuming the terms of the Plan are ambiguous, the court finds the Committee's interpretation to be arbitrary and capricious. Any ambiguity is created by the fact that life insurance is terminated upon retirement, yet the terms of the Plan allow a participant to file for PTD Life Insurance benefits within twelve (12) months of the last day worked. Page 93 of the SPD provides: "Claims for PTD benefits must be filed within <u>12 months from the last day worked</u>."

The court finds the Committee's decision to acknowledge the language terminating coverage upon retirement, but disregard the language allowing a Plan participant twelve (12) months after stopping work with the Company, arbitrary and capricious. In its denial of Plaintiff's claim, the Committee completely ignored the language allowing a participant twelve (12) months to file for PTD Life Insurance benefits. The court finds this unreasonable.

Now Defendant argues: "Stopping active work, in the context of a disability, logically means stopping active work <u>due</u> to the disability and is a more discrete moment than the onset of the disability itself, from which to trigger the time period within which to submit a claim." The court disagrees that this is the "logical" or reasonable interpretation. It is made clear from Appendix B, "How Absences from Work Affect Your Benefits," on page 128 of the SPD, that life insurance coverage continues during a disability absence. Thus, a Plan participant would not be concerned with filing for PTD Life Insurance benefits during a disability absence from work. A Plan participant would only <u>need</u> PTD Life Insurance benefits after the coverage would normally end, i.e. upon termination of employment.

Moreover, to the extent the Committee based its decision on the fact that Plaintiff took a

Level Income Option early retirement, the decision is arbitrary and capricious. Nothing in the terms of the Plan indicates that a participant may not take a Level Income Option early retirement and opt for PTD Life Insurance benefits.

Plaintiff worked for the Company for nearly thirty-seven (37) years. In light of that fact and the court's rulings, the court is optimistic that the Committee will be eager to reevaluate and reconsider its ruling on Plaintiff's claim for PTD Life Insurance benefits.

## SECOND CLAIM

Plaintiff requests penalties pursuant to 29 U.S.C. § 1132(c). Plaintiff argues that his counsel sent a letter dated April 9, 2009 requesting "a copy of the actual plan documents" and Defendant ignored the request. Defendant first argues that the relevant "plan documents" were timely provided to Plaintiff. Defendant argues that Plaintiff was provided with a copy of the SPD before he even requested it, and that a copy of the only other "plan document," the Adoption Agreement, was provided to him on January 15, 2010. Defendant further argues that Plaintiff cannot show that he suffered any prejudice from any delay.

In arguing that Defendant did not respond to its request for document, Plaintiff states that Defendant ultimately turned over more than just the SPD when it produced the Administrative Record. Plaintiff states that the Adoption Agreement is "largely, if not completely, irrelevant." If this is true, then Plaintiff would not have been prejudiced by not having received it sooner. The other pages Defendant produced within the Administrative Record are documents directly relating to Plaintiff. They are not part of what Plaintiff requested, the "plan documents."

While "neither prejudice nor bad faith is required for a district court to impose penalties

17

under 29 U.S.C. § 1132(c), the presence or absence of these factors can certainly be taken into account by a district court in deciding whether to exercise its discretion and impose a penalty. Deboard v. Sunshine Min. and Ref. Co., 208 F.3d 1228, 1244 (10th Cir. 2000). Plaintiff, having in his possession the main plan document necessary, the SPD, requested a copy of the "plan documents" on April 9, 2009. By Plaintiff's own account, the only other "plan document" ultimately provided to him on January 15, 2010 was irrelevant to his case. The other documents within the Administrative Record are not "plan documents," so were not included in what he requested on April 9, 2009.

The court finds that to the extent Defendant failed to timely respond to the request for "plan documents," Plaintiff suffered no prejudice. The court, therefore, declines to grant Plaintiff's request for penalties.

Moreover, as Defendant argues, the Plan Administrator, the Committee, would be the proper defendant to an action for penalties pursuant to § 1132(c). Plaintiff has moved, therefore, to amend his Complaint to add the Committee. Because the court would not grant § 1132(c) penalties in any event, the court hereby DENIES Plaintiff's motion to amend.

## CONCLUSION

The court finds that the terms of the Plan are not ambiguous, and that a reasonable person in the position of a Plan participant would have understood the terms of the Plan to mean that he had twelve (12) months after his retirement date to file for PTD Life Insurance benefits. The court further finds that if there is any ambiguity, such ambiguity is created by the language in the SPD stating that life insurance coverage ends when employment is terminated, but then allowing twelve

(12) months after the last day worked to claim PTD Life Insurance benefits. To that end, the court finds the Committee's decision to honor the coverage end date, but ignore the twelve (12) month claim period arbitrary and capricious.

For these reasons, Defendant's Motion for Judgment on the Administrative Record [Docket No. 31] is DENIED. This matter is hereby REMANDED to Defendant who shall direct the Committee to further evaluate and reconsider Plaintiff's claim for PTD Life Insurance benefits in accordance with this Order and Opinion. The Motion for Discovery Outside the Record [Docket No. 20] is DENIED. The Motion for Leave to Amend Complaint to Add Party Defendant [Docket No. 44] is also DENIED.

IT IS SO ORDERED this 10th day of November, 2010.

**Dated this 10th Day of November 2010.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

j4h4i0